**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CALVIN FARMER  AND BETTY FARMER** | **Civil Action No. _____** |
| **Plaintiff** | **JUDGE _____** |
| versus | |
| **ZIMMER, INC., a Delaware Corporation; ZIMMER HOLDINGS, INC., a Delaware Corporation; ZIMMER PRODUCTION, INC., a Delaware Corporation;** | **MAGISTRATE _____** |
| **Defendants** | **[JURY TRIAL DEMANDED]** |

## COMPLAINT

Complainants, **CALVIN FARMER and BETTY FARMER**, (hereinafter collectively "Complainant"), by and though undersigned counsel, bring this action against Defendants, **ZIMMER, INC., a Delaware Corporation; ZIMMER HOLDINGS, INC., a Delaware Corporation; ZIMMER PRODUCTION, INC., a Delaware Corporation;** (hereinafter collectively "Defendants") and allege as follows:

## INTRODUCTION

1.

_____On November 3, 2006, the 77 year old Complainant underwent Left Total Hip Arthroplasty, Revision of the Acetabulum and Femoral Component with implementation of Zimmer Durom

1

acetabular shell and head ("Durom Cup"), performed by Dr. Cambize Shahrdar.in Shreveport, Louisiana.

2.

Mr. Farmer has constant hip pain to date, requiring pain medication, resulting from the defects in the Zimmer Durom Cup implanted in Mr. Farmer despite the fact that Mr. Farmer had "normal" x rays postoperatively.

3.

In June of 2008, defendants suspended the sale of the Durom Cup because the product was defective and/or not properly labeled.

4.

On May 29, 2008, Defendants sent a letter to Dr. Shahrdar admitting that there was a defect with the Durom Cup.

5.

_____From the time of the surgery through June of 2008, Dr. Shahrdar was unable to determine the cause of the hip pain in Mr. Farmer due to the normal x-rays.

_____6.

On June 27, 2008, Dr. Shahrdar sent Mr. Farmer a letter noting the defects of the Durom Cup and, thus,  giving Mr. Farmer the first possible notice of the Durom Cup defect.

7.

On August 13, 2008, Defendants sent Mr. Farmer a letter recognizing the problem with the Durom Cup and offering "corrective action".

8.

Unfortunately for Complainant, Dr. Shahrdar determined that Mr. Farmer's body could not withstand another surgery.

9.

Mr. Farmer lives in constant pain because fo the defective Zurom Cup implanted by Dr. Shahrdar.

**JURISDICTION AND VENUE**

10.

Complainant was at all relevant times a resident of the City of Shreveport, Caddo Parish, State of Louisiana.

11.

Defendants are as follows:

a.)     Zimmer, Inc., is a foreign corporation incorporated under the law of the State of Delaware with its principal place of business in Indiana;

b.)     Zimmer Holdings, Inc., is a foreign corporation incorporated under the law of the State of Delaware with its principal place of business in Indiana; and

3

c.)      Zimmer Production, Inc., is a foreign corporation incorporated under the law of the

State of Delware with its principal place of business in Indiana.

12.

This Court has jurisdiction over this action pursuant to 28 U.S.C. 1332 because Complainant

allege that the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of

interest and costs.

13.

Defendant's are incorporated in and have principal places of business in states other than the

state in which Complainant resides.

14.

Upon information and belief, at all relevant times, all defendants were/are presently doing,

transacting, soliciting and/or conducting business in the State of Louisiana and derived/derives

substantial revenue from goods used and consumed in the State of Louisiana and is hence subject to

the jurisdiction of this court.

15.

Upon information and belief, at all relevant times, all defendants expected or should have

expected their acts to have consequences within the State of Louisiana.

4

16.

Venue in this Court is proper pursuant to 28 U.S.C. 1391 in that substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District, and defendants are subjected to personal jurisdiction in this district.

## BACKGROUND FACTS

17.

Defendants designed, researched, manufactured, tested, sought approval by the United States Food and Drug Administration ("FDA") and advertised, promoted, marketed, sold and/or distributed the Durom Cup as an appropriate instrumentation for use in a  Total Hip Arthroplasty.

18.

Upon information and belief, the Durom Cup's bearing surfaces (metal head and metal shell) are made of a forged cobalt chrome alloy with a  high carbide content as opposed to other like implants made from a cast metal alloy.

19.

Upon information and belief, the backside of the cup that is supposed to adhere to the pelvic bone is covered with a titanium coating to ensure adhesion of the bone to the pelvis.

20.

Upon information and belief, the Durom Cup has two equatorial fins protruding by 0.5 mm that are polished and do not have the titanium coating.

5

21.

Upon information and belief, the design of the Durom Cup causes the Cup to separate from the bone rather than adhere to the bone, causing pain.

22.

At all times relevant hereto, Defendants negligently designed, manufactured, marketed, advertised, promoted, sold and/or distributed the Durom Cup as a safe and effective implant for use in Total Hip Arthroplasty.

23.

At all times relevant hereto, Defendants failed to warn of the dangers of the Durom Cup including, but not limited to, the fact that Durom Cup can separate from the bone rather than adhere to the bone.

24.

At all times relevant hereto, Defendants knew from correspondence and/or conversations with Dr. Lawrence Dorr, and had reason to know, or should have known, that the Durom Cup was defective thereby defrauding Plaintiff while accelerating the risk of harm of the plaintiff.

25.

At all material times hereto, Defendants knew, and had reason to know, or should have known, that its representations that the Durom Cup was proper for use in Total Hip Arthroplasty were materially false and misleading.

26.

Defendants knew, had reason to know, or should have known of the defective nature of their product but failed to warn Complainant.

27.

Upon information and belief, Defendants concealed their knowledge of the defects in their products from the Complainant and/or the physicians, hospitals, and/or the FDA.

28.

Consequently, because the Defendants' fault, Complainant seeks damages including, but not limited to, medical costs, past and future physical pain and suffering, past and future mental anguish, medical expenses, and other expenses.

## STRICT LIABILITY-FAILURE TO WARN

29.

Complainant's hereby restate and allege each and every allegation set forth above, with the same force and effect as if herein repeated and set forth at length.

30.

Defendants developed, manufactured, marketed, and distributed the Durom Cup implanted in the Complainant and sold it in the course of their business and continued to do so even after acquiring knowledge that the Durom Cup was defective and could cause injury to the Complainant.

31.

As a direct and proximate result of Defendants' failure to warn of this serious risk, the Complainant has suffered damages including underwent severe emotional distress and pain..

32.

The Durom Cup was unreasonably dangerous when implanted in Complainant.

33.

Defendants continued to sell defective product without any warning to physicians or patients, including Complainant and his physicians which Defendants knew or should have known were defective and dangerous.

34.

Durom Cup was expected to, and did, reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

35.

At those times, the Durom Cup was in an unsafe, defective, and inherently dangerous condition which was unreasonable dangerous to its users and, in particular Complainant.

36.

The Durom Cup was so defective in design or formulation or manufacture that when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design, formulation or manufacture of the Durom Cup.

37.

At all material times, the Durom Cup was in a defective condition and unsafe, and Defendants knew, had reason to know, or should have known that said product was defective and unsafe, especially when used in the form and manner as provided by Defendants.

38.

Defendants knew, or should have known, that at all material times, Durom Cup was in a defective condition and was/is inherently dangerous and unsafe.

39.

Defendants had a duty to create and sell a product that was not unreasonably dangerous for its normal, intended use.

40.

Defendants' Durom Cup product was designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed in a defective condition be Defendants and was unreasonably dangerous to its intended users, including Complainant.

41.

Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the health of consumers thereof including Complainant.  Defendants are therefore strictly liable for the injuries sustained by the Complainant.

42.

Complainant, acting as a prudent person, could not discover that Durom Cup was defective as herein mentioned or perceived its danger prior to June of 2008.

43.

The Durom Cup designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions as the Defendants knew, or should have known, that the defective product created a risk of serious and severe and permanent health consequences.

44.

Durom Cup as designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by the Defendants is defective due to inadequate warnings and/or inadequate testing.

10

45.

Durom Cup  as designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by the Defendants is defective due to inadequate post-marketing surveillance and/or warnings because, upon information and belief, sales continued after Defendants knew, or should have known, of the manufacturing defect and risks including as severe and permanent health consequences.

46.

By reason of the forgoing, Defendants are strictly liable in tort to the Complainant for the manufacturing, promoting, distribution, and selling of a defective product, Durom Cup.

47.

Defendants' defective design, manufacturing defect, and inadequate warnings of the dangers associated with Durom Cup were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

48.

As a direct and proximate result of the defective condition of Durom Cup as manufactured and sold by Defendants, Complainant suffered and continue to suffer damages.

## LOUISIANA PRODUCTS LIABILITY ACT

49.

Complainants hereby restate and allege each and every allegation set forth above, with the same force and effect as if herein repeated and set forth at length.

50.

Defendants' defective product proximately caused damage to the Complainant which said damage was caused by a characteristic of the product that rendered it unreasonably dangerous arising from a reasonably anticipated use of the product by the Complainant, thus rendering Defendants liable to the Complainant's pursuant to LSA-R.S. 9:2800.54.

51.

The product in question is unreasonably dangerous for the following reasons:

a.      It is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;

b.      It is unreasonably dangerous in design as provided in R.S. 9:2800.56;

c.      It is unreasonably dangerous because an adequate warning about the product was not provided as required by R.S. 9:2800.57; and

d.      It is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

12

52.

The characteristics of the product that render it unreasonably dangerous under R.S. 9:2800.55, et seq. existed at the time the product left the control of the manufacturer or resulted from a reasonably anticipated alteration or modification of the product.

53.

For all the reasons alleged herein, Defendants' defective product was unreasonably dangerous in construction and composition because, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product, or from otherwise identical products manufactured by the same manufacturer.

54.

For all the reasons alleged herein, Defendants' defective product was unreasonably dangerous in design at the time the product left its manufacturer's control in that:

a.      There existed an alternative design for the product that was capable of preventing the Complainants' damage; and

b.      The likelihood that the product's design would cause the Complainants' damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.

55.

For all the reasons alleged herein, Defendants' defective product was unreasonably dangerous because an adequate warning about the product had not been provided and at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide adequate warning of such characteristic and its danger to users and handlers of the product.

56.

Further, the Defendants, after the product left their control, acquired knowledge of a characteristic of the product that may cause damage and the danger of such characteristic (or, alternatively, Defendants would have acquired such knowledge if it had acted as a reasonably prudent manufacturer), and thus is liable for damages suffered by Complainant, which arose as a consequence of Defendants' failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users.

## **NEGLIGENCE**

57.

Complainant hereby restate and allege each and every allegation set forth above, with the same force and effect as if herein repeated and set forth.

58.

Defendants are the designer, manufacturer, seller, and/or supplier of the devices implanted in Complainant.

59.

When placed in the stream of commerce, Complainant's Device was not accompanied by any meaningful warnings regarding the risk associated with it. The warnings given by Defendant were silent as to the particular risks for which the Device has been recalled/suspended.

60.

Defendant had a duty to exercise reasonable care in the design, manufacture, sale and/or distribution of its implants.

61.

Defendant was negligent in the design, manufacture, testing, advertising, marketing, promotion, labeling, failure to warn, and sale of its implants, including the implant received by Complainant. Defendant knew or should have known that patients, such as Complainant, would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

62.

The device listed in the Complaint was unreasonably dangerous and defective because:

a.   The manufacturing processes for the tablets and certain of its components did not satisfy and Food and Drug Administration's Pre-Market Approval standards for the devices;

b.   The failure of the manufacturing processes for the implants and certain of its components to satisfy the Food and Drug Administration's Pre-Market Approval standards for the implants resulted in unreasonably dangerous manufacturing defects; and

c.   The Defendant failed to warn of the unreasonably risks created by these manufacturing defects.

63.

Defendants' actions as described herein constitute knowing omissions, suppression or concealment of material facts, made with the intent that others would rely upon such concealment, suppression or omissions in connection with the marketing of the devices.

64.

The behavior of the Defendants demonstrates that they acted unlawfully and negligently, used or employed unconscionable commercial business practices, engaged in deception, fraud, false pretenses, false promises or misrepresentations, and/or perpetrated the knowing concealment, suppression or omission of material facts with the intent that consumers, including Complainant, would rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of its implants.

16

65.

As the direct and proximate cause and legal result of the Defendants' failure to provide appropriate warnings for Complainant's implants, and as a direct and legal result of the negligence, other wrongdoing and actions or omissions of Defendants described herein, the devices were implanted into Complainant and Complainant has suffered consequential damages including but not limited to: mental pain and anguish; and other associated injuries and damages.

66.

Defendants' negligence was the direct and proximate cause of Complainant injuries and damages set forth herein.

## NEGLIGENT MISREPRESENTATION

67.

Complainants hereby restate and allege each and every allegation set forth above with the same force and effect as set forth herein and repeated at length.

68.

Defendants made misrepresentations and omissions of material facts, including, but not limited to:

a.      That Complainant's implants were fit for its intended use;

b.      That Complainant's implants were of merchantable quality;

17

c.    That Complainant's implants were safe and efficacious in the treatment of Complainant's medical conditions;

d.    That Complainant's implants would function as intended when necessary;

e.    That Complainant's implants were defective, such that it would fail to function as intended; and

f.    That Complainant's implants were inherently dangerous.

69.

These misrepresentations and/or omissions were false and misleading at the time they were made.

70.

Defendants negligently and carelessly made the foregoing misrepresentations without a basis and did not posses information on which to accurately base those representations.

71.

Defendants were aware that they did not posses information on which to accurately base the foregoing representations and concealed from Complainant that there was no reasonably basis for making said representation herein.

72.

When Defendants made the foregoing representations, they knew or should have known them to be false.

18

73.

In reliance upon the foregoing misrepresentations by the Defendants, Complainant was induced to and did subject himself to the use of Durom Cup.  If Complainant had known of the true facts, he would not have taken such action and risk.  Complainant's reliance on Defendants' misrepresentations and omissions was reasonable because said representations were made by individuals and entries in a position to know the true facts.

74.

As a result of the foregoing negligent misrepresentations by Defendants, Complainant will continue to suffer injury, expense and economic loss as previously described, rendering Defendant liable for said damages.

## BREACH OF IMPLIED WARRANTY

75.

Complainant restate and allege each and every allegation set forth above with the same force and effects as it set forth herein and repeated at length.

76.

Defendants are in the business of designing, manufacturing, and/or supplying and/or placing into stream of commerce Durom Cup for consumers.

19

77.

By placing Durom Cup into the stream of commerce, Defendants impliedly warranted that it was merchantable and fit and safe for its intended use.

77.

Durom Cup placed into the stream of commerce by Defendants, were defective and accordingly, was neither fit, safe or merchantable for its intended use.

78.

The defects in Durom Cup, designed, manufactured and/or supplied and/or placed into the stream of commerce by Defendants, were present at the time the product left Defendants' control.

79.

Defendants breached the implied warranty for Durom Cup because said product was defective, unmerchantable, and not fit for its intended purpose.

80.

Complainant was a foreseeable user of the Durom Cup designed, manufactured and/or supplied and/or placed into the stream of commerce by Defendants.

81.

As a direct and proximate result of Defendants' breach of implied warranties, Complainant will continue to suffer injury, expense and economic loss as previously described, rendering Defendants liable for said damages.

20

82.

Betty Farmer brings claims against the Defendants for loss of consortium.

83.

## DEMAND FOR JURY TRIAL

Complainant hereby demands a jury trial as to all claims triable in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Complainant prays:

a.   That process issue according to law;

b.   That Defendants be served with a copy of Complainant's Complaint and show cause why the prayers for relief requested by Complainant's herein should not be granted;

c.   That Complainant be granted a trial by jury in this matter;

d.   That the Court enter a judgment against Defendants for all damages allowable to Complainant;

e.   That the costs of this action be cast upon Defendants;

f.   That the Court grant Complainant such further relief which the Court deems just and appropriate; and

g.   Pre-Judgment Interest and Costs.

Respectfully submitted,


**MARTZELL & BICKFORD**

*s/ Lawrence J. Centola, III*
_____
**SCOTT R. BICKFORD T. A. (#1165)**
**LAWRENCE J. CENTOLA, III (#27402)**
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065
(504) 581-7635 (Facsimile)

and

**CO-COUNSEL OF RECORD**

**L. HAVARD SCOTT, III**
1049 Southfield Road
Shreveport, Louisiana 71106
(318) 868-0441
(318) 868-0023

**ATTORNEYS FOR COMPLAINANTS**

**PLEASE SERVE:**

       **Zimmer Inc.**,
       Through its Corporate Headquarters
       1800 West Center Street
       Warsaw, IN 46581-0708

       **Zimmer Holdings, Inc.**,
       Through its Corporate Headquarters
       345 East Main Street
       Warsaw, IN 46580

22

_____**Zimmer Productions, Inc.**,
Through its Corporate Headquarters
345 E Main St,
Warsaw, IN 46580-2746

F:\Clients\FARMER\PLEADINGS\Original Complaint 06.22.09.wpd